## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 02 2020, 10:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dorothy Ferguson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of Parental Rights of:

F.F. (Minor Child),

and

J.F. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

April 2, 2020

Court of Appeals Case No.
19A-JT-2423

Appeal from the Madison Circuit Court

The Honorable G. George Pancol, Judge

Trial Court Cause No.
48C02-1904-JT-187

**Baker, Judge.**

[1] J.F. (Mother) appeals the trial court's order terminating her parent-child relationship with her minor son, F.F. (Child). Mother argues that the termination proceedings violated her due process rights and that the evidence is insufficient to support the termination order. Finding no due process violations and that the evidence is not insufficient, we affirm.

## Facts

[2] Child was born in March 2008; his father is deceased. On December 28, 2016, when Child was eight years old, the Department of Child Services (DCS) received a report containing the following allegations: Mother was using methamphetamine and alcohol and was impaired in Child's presence; Child witnessed domestic violence between Mother and her cousin and when Mother cut her boyfriend with a knife; and Mother was not ensuring that Child had enough to eat, was attending school, or was supervised appropriately. In January 2017, DCS spoke with Child at school. He disclosed, among other things, that he had "witnessed an event of extreme violence in the home," that "his Mother and Father used to physically fight a lot," and that Mother "drinks alcohol and then gets in fights." Appellant's App. Vol. II p. 100-01. Around that same time, Mother tested positive for methamphetamine and amphetamine.

[3] On February 1, 2017, DCS removed Child from Mother's care and custody and placed him in foster care. Two days later, it filed a petition alleging that Child was a Child in Need of Services (CHINS). On March 21, 2017, the trial court

found Child to be a CHINS after Mother admitted to having substance abuse issues. In the April 18, 2017, dispositional decree, the trial court ordered Mother to, among other things, participate in individual and family counseling and follow any treatment recommendations; complete a substance abuse assessment and comply with any treatment recommendations; and submit to random drug screens.

[4] Between February and September 2017, Mother participated inconsistently with services. She completed a substance abuse assessment and started the recommended outpatient services, but was discharged after she had an altercation with the person running the class. She was referred to another provider but did not follow up on the referral or participate with the service. DCS also referred Mother to participate with individual counseling, but she did not participate with that service either.

[5] Mother provided some, but not all, requested random drug screens. On March 31, 2017, she tested positive for marijuana; on May 16, for methamphetamine, amphetamine, and cocaine; on May 22, for alcohol and methamphetamine; on May 23, for alcohol and methamphetamine; on June 22, for marijuana; on June 23, for alcohol; on July 6, for alcohol; on July 13, for methamphetamine and amphetamine; and on July 25, for methamphetamine. Mother admitted at the termination hearing that she used illegal substances throughout the CHINS case.

[6]     From September 2017 through January 2019, Mother completed two more substance abuse assessments, but was discharged from the follow-up services for noncompliance. She began home-based therapy and home-based case management, but was discharged for noncompliance.

[7]     For much of the case, Mother attended visits with Child, but had periods of inconsistency. More than once, visits were closed because Mother missed appointments. But DCS continued to make new referrals for visitations and Mother continued to visit until June 2018. But from June through December 2018, Mother visited Child only once, around Christmas. She did not ever try to reestablish visits after the 2018 Christmas visit.

[8]     On January 10, 2019, Mother tested positive for methamphetamine. DCS referred her for a new substance abuse assessment and treatment, but she failed to comply. Throughout the case, Mother did not have stable employment and was unable or unwilling to fully comply with or complete any of the court-ordered services.

[9]     On April 17, 2019, DCS filed a petition to terminate Mother's parental rights. Mother was present at the May 20, 2019, initial hearing in the termination proceedings. The trial court appointed an attorney to represent Mother and told Mother to meet with the attorney following the hearing.

[10]     At some point, Mother was arrested on a probation violation.[1]  At the July 16, 2019, termination factfinding hearing, Mother was incarcerated in the Henry County Jail but was present telephonically and by her attorney.  Mother testified at the hearing, admitting that she used methamphetamine repeatedly throughout the CHINS case, that she had not obtained a sponsor for Alcoholics Anonymous or Narcotics Anonymous, and that she had not completed substance abuse treatment.  Mother stated that before she was incarcerated, she had begun looking for a drug treatment program and that after she was released, she wanted to "get into rehab."  Tr. Vol. II p. 24.

[11]     Child's therapist testified that in her opinion, termination of Mother's parental rights was in Child's best interests.  Child was traumatized by his formative years and needed ongoing therapy to address his issues.  He needs the stability and consistency provided in his preadoptive foster home.  In the therapist's opinion, it is in Child's best interests to be adopted by his foster family.  The Family Case Manager (FCM) and Court Appointed Special Advocate (CASA) likewise agreed that it was in Child's best interests to terminate the parent-child relationship.

[12]     The termination factfinding evidence closed at the end of the July 16, 2019, hearing.  On July 17, 2019, the trial court received a handwritten note from

---

[1] Mother was on probation for an October 2018 possession of a legend drug conviction.  She violated probation in April 2019, when multiple items of drug paraphernalia were found in her residence.

Mother requesting a continuance for a hearing. It appears that the note had been sent from jail on July 16, 2019, though the trial court did not receive it until the next day. She asked to continue the termination hearing until such time when she could appear in person.[2]

[13] On September 3, 2019, Mother's attorney filed a motion to present new evidence, alleging that since Mother had been released from incarceration, she had set up and been participating with services. DCS objected, and the trial court denied the motion. On September 23, 2019, the trial court entered an order terminating the parent-child relationship. The trial court made numerous, detailed findings of fact, including the following general findings:

> The child's mother has made no serious attempt to participate in any reunification services or otherwise remedy the child's CHINS condition. All service provider referrals created in the case have been closed as unsuccessful due to mother's lack of participation and absence. This includes visitation with the child, which the child's mother has failed to do, thus sacrificing any lasting bond between herself and the child;
>
> The child's mother has engaged in a career of drug abuse and criminal activity throughout the CHINS and termination proceedings, through and including the date of termination trial . . . , at which time she was incarcerated for a probation violation. She has failed to stop this conduct and divert her attentions to becoming a better parent. She has made excuses

---

[2] Mother briefly argues on appeal that the trial court erred in denying her request for a continuance. But the trial court did not receive the request until the day *after* the hearing took place. Additionally, Mother was present telephonically and by counsel at the hearing, and neither she nor her counsel requested a continuance at the outset of the hearing. Therefore, she is not entitled to relief on this basis.

and blamed any other entity than herself for her failure to remedy the child's CHINS conditions;

The child's mother has failed to address and remedy her own long term and ongoing instability and inability to provide for herself, let alone the child;

As of the date of the trial session in the termination proceedings, the child has been removed from the home and care of the child's mother for 29 consecutive months.

Appealed Order p. 9-10. Mother now appeals.

# Discussion and Decision

## I. Due Process

[14] Mother argues that her due process rights were violated because she was unable to consult with her attorney prior to the termination hearing and because the trial court denied her motion to submit new evidence two months after the termination hearing had concluded. When the State seeks to terminate parental rights, it must do so in a manner that meets the requirements of due process. *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014).

[15] With respect to Mother's communication with her attorney, we note that she did not lodge an objection on this basis to the trial court. That means that she has waived this issue and that there is nothing in the record supporting her assertion. We have no way of knowing whether, in fact, Mother was unable to contact her attorney or, if that was the case, the reason for the lack of

communication.[3]  Under these circumstances, we cannot find a due process violation.

[16]  With respect to Mother's request to reopen the evidence two months after the termination hearing, we decline to find a due process (or any other) violation on this basis.  Mother was present telephonically and by counsel at the termination hearing.  She was able to present evidence (indeed, she testified at length) and cross-examine witnesses.  There is no due process or statutory requirement that the trial court consider any evidence of remedial measures taken by a parent in the months *after* the close of evidence, especially when Mother had had the previous two and one-half years to participate with services and work on becoming a safe and appropriate parent.  While we commend Mother for the steps she claims to have taken after being released from incarceration, those actions simply occurred too late to be incorporated into the termination hearing.  We find no error on this basis.

## II.  Termination

## A.  Standard of Review

[17]  Our standard of review with respect to termination of parental rights proceedings is well established.  In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility.

---

[3] We know that Mother was aware of the identity of her attorney because Mother was present at the initial termination hearing, when the trial court appointed the attorney, informed Mother who it would be, and instructed Mother to meet with the attorney after that hearing.

*K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005) (internal quotations omitted).

[18] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)    that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence.

*K.T.K.*, 989 N.E.2d at 1230.

## B.  Remedy of Conditions

[19]    Mother argues that the evidence does not support the trial court's conclusion that there is a reasonable probability that the conditions resulting in Child's removal and continued placement outside of her care and custody will not be remedied.  The reason for Child's initial removal from Mother's care and custody was Mother's ongoing substance abuse; the reasons for Child's continued removal from Mother were Mother's substance abuse, instability, and refusal to participate with court-ordered services.

[20]    The record reveals that Mother continued to use methamphetamine and other substances throughout the years-long CHINS case.  While she completed multiple substance abuse assessments, not once did she participate consistently with or complete the recommended treatment.  She likewise was unsuccessfully discharged from individual counseling, home-based therapy, and home-based case management.

[21]    Perhaps most damning of all, Mother was inconsistent in attending visits with Child.  She was discharged from visits multiple times because of her failures to attend.  And as of the time of the termination hearing in July 2019, Mother had not seen Child since December 2018.  While Mother argues that she and Child

had a bond, we cannot find fault with the trial court's conclusion that Mother's failure to attend visits consistently sacrificed whatever bond remained.[4]

[22] At the time of the termination hearing, Mother was incarcerated for violating probation that she was serving as a result of a drug-related conviction, and her probation violation itself was likewise drug-related. Given the lengthy CHINS case, during which Mother failed to make any significant progress on any of her many issues despite many opportunities to do so, we can only conclude that the trial court did not err by finding that there is a reasonable probability that the conditions resulting in Child's initial and continued removal from Mother's care will not be remedied.[5]

[23] The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.

---

[4] Mother insists that the only basis for the termination was her incarceration. It is patently clear from the record that this is untrue.

[5] Mother also argues that the evidence does not support the trial court's conclusion that continuation of the parent-child relationship poses a threat to Child's well-being. Because the statute is phrased in the disjunctive and we have found the former element satisfied, we need not consider this one. But we note that the same evidence would likewise support this element as well as the trial court's conclusion that termination is in Child's best interests.